1   WRIGHT, FINLAY & ZAK, LLP
2   Nichole L. Glowin, Esq. SBN 262932
    Michael R. Asatourian, Esq. SBN 285099
3   4665 MacArthur Court, Suite 200
    Newport Beach, CA 92660
4   Tel: (949) 477-5050; Fax: (949) 608-9142
    nglowin@wrightlegal.net; masatourian@wrightlegal.net
5
6   Attorneys for Movant,
    SETERUS, INC. as the authorized subservicer for FEDERAL NATIONAL MORTGAGE
7   ASSOCIATION ("FANNIE MAE"), Creditor c/o Seterus, Inc., its successors and/or assigns

8

9                   UNITED STATES BANKRUPTCY COURT

10          NORTHERN DISTRICT OF CALIFORNIA- OAKLAND DIVISION

11

12  In re:                          )   Case No.: 15-42808
                                    )   Chapter: 13
13  JOHN CLAYTON STIFLER,           )
                                    )   R.S. No. NLG-1
14              Debtor.             )
                                    )
15                                  )
                                    )   **DECLARATION IN SUPPORT OF**
16                                  )   **MOTION FOR RELIEF FROM**
                                    )   **AUTOMATIC STAY UNDER 11 U.S.C. § 362**
17                                  )   **(REAL PROPERTY)**
                                    )
18                                  )
                                    )   Date:       11/29/2017
19                                  )   Time:       9:30 am
                                    )   Ctrm:       220
20                                  )   Location:   1300 Clay Street
                                    )               Oakland, CA 94612
21                                  )
22  _____ )

23      I, Shane A. Inman, hereby declare as follows:

24      1.      I am employed as Bankruptcy Specialist with Seterus, Inc. ("Seterus") who sub-

25  services the Subject Loan at issue herein (as defined below) on behalf of Movant, SETERUS,

26  INC. as the authorized sub-servicer for FEDERAL NATIONAL MORTGAGE ASSOCIATION

27  ("FANNIE MAE"), Creditor c/o Seterus, Inc., its successors and/or assigns ("Movant") pursuant

28  to the Power of Attorney Agreement executed by the relevant parties, a true and correct copy of

which is attached hereto as **Exhibit 7.** In the regular performance of my job functions, I am familiar with and have access to the business records maintained by Seterus for the purpose of servicing mortgage loans. These records, which include date compilations, electronically imaged documents, and others, are made at or near the time of date by, or from information provided by persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Seterus. It is the regular practice of Seterus' mortgage servicing business to make and/or maintain these records including the records of prior servicers of the loans now serviced by Seterus, including the Subject Loan at issue in this action. Seterus relies upon the accuracy of those records in conducting its business of servicing loans, including the Subject Loan at issue in this action.

2.     I regularly verify Seterus' records, loan histories, correspondence, and communication histories. This entails reviewing, becoming familiar with, and participating in the review of documents related to loan accounts for loans serviced by Seterus.  From my employment for Seterus, I am familiar with its business operations and with the services that Seterus offers to its customers.

3.     I have personally reviewed Seterus' records as they related to the Subject Loan obligation referred to herein, and as to the following facts, I know them to be true of own knowledge or I have gained knowledge of them from my review of Seterus' business records. If called upon to testify, I could and would competently testify to the following under oath.

4.     On or about August 25, 2011, Debtor  JOHN CLAYTON STIFLER (hereinafter referred to as "Debtor") and Francisca T. Stiffler (hereinafter referred to as "Co-Borrower") executed a promissory note ("Note") made payable to Bank of America, N.A. ("Lender") in the original principal amount of $280,000.00. The Note was and is secured by a Deed of Trust ("Deed of Trust") recorded against the real property located at 2501 Roca Street, Antioch, California 94509 ("Property") in the Official Records for the County of Contra Costa, California, on May 23, 2012, as Instrument No. 2012-0119637-00. True and correct copies of the Note and Deed of Trust are attached hereto as **Exhibits 1 and 2**, respectively, and are incorporated herein by reference as though set forth in full.

Case 15-42808    Doc# 24-2   Filed 01/09/17   Entered 01/09/17 13:01:06   Page 2 of 36

5.      The Note and Deed of Trust were subsequently transferred and ultimately were delivered and assigned to Movant by affixing an endorsement and/or allonge to the Note and executing an Assignment of the Deed of Trust to Movant on May 18, 2016 ("Assignment"). Movant is in possession of the original Note and Deed of Trust and is therefore authorized to exercise all rights thereunder. Seterus, Inc. ("Seterus") currently sub-services the Note and Deed of Trust on behalf of Movant. True and correct copies of the relevant chain of title, including a copy of the Assignment, are attached hereto as **Exhibit 3**, collectively, and are incorporated herein by reference as though set forth in full.

6.      Pursuant to the Note, Debtor was obligated to make monthly payments commencing July 1, 2004, and continuing on the first day of each consecutive month thereafter until June 1, 2034, when all outstanding amounts become due and payable.  Pursuant to the Deed of Trust, attorneys' fees and costs incurred as a result of any bankruptcy case filed concerning the Property may be included in the outstanding balance under the Note.

7.      On or about September 11, 2015, Debtor filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, Oakland Division, as Case No. 15-42808 ("Bankruptcy Action").

8.      On or about October 19, 2015, the Court in the Bankruptcy Action entered an order ("Order Confirming Chapter 13 Plan") confirming Debtor's proposed Chapter 13 Plan ("Plan"). Pursuant to the confirmed Plan, Debtor agreed to continue making the requisite post-petition mortgage payments directly to the Movant. True and correct copies of Debtor's Plan and the Order Confirming the Chapter 13 Plan are attached hereto as **Exhibit 4**, collectively, and are incorporated herein by reference as though set forth in full.

9.      In or about October 2016, Debtor defaulted post-petition under the terms of the Note and Deed of Trust by failing to make the required monthly mortgage payments due to Movant. Since that time, Debtor has remitted some payments which were applied to the most delinquent post-petition month due. Currently, Debtor still owes Movant four (4) post-petition payments for the months of June 1, 2017 through September 1, 2017 in the following amounts:
///

Case 15-42808    Doc# 24-2    Filed 10/19/17    Entered 10/19/17 13:30:06    Page 3 of 36

| | | |
|---|---|---|
| | 4 regular payments at $1,307.71 each: | $5,230.84 |
| | Post-Petition Suspense Balance: | ($0.00) |
| | **Total Post-Petition Delinquency:** | **$5,230.84** |

A true and correct copy of Movant's Post-Petition Payment History that accurately reflects the dates and amounts of all payments made by Debtor since the petition date is attached hereto as **Exhibit 5** and is incorporated herein by reference as though set forth in full.

10. Pursuant to Debtor's Schedules A and D filed herein, the fair market value of the Property as of the date of the commencement of the Bankruptcy Action was $310,000.00. Debtor's Schedules further reflect that the Property is encumbered by a 1st position deed of trust in favor of Movant and a second position deed of trust in the amount of $132,197.45 in favor of Bank of America ("BofA") A true and correct copy of Debtor's Schedule A and D are attached hereto as **Exhibit 6** and are incorporated herein by reference as though set forth in full.

11. As set forth in Movant's Relief from Stay Coversheet filed concurrently herewith, the Property is encumbered by liens in the total amount of $372,247.28; which eclipses the $310,000.00 Property value. Accordingly, as detailed below, there is no equity in the Property for the benefit of Debtor or his estate:

| | |
|---|---|
| Fair Market Value: | $ 310,000.00 |
| Less: | |
|   Movant Deed of Trust: | $ 240,049.83 |
|   BofA Deed: | $ 132,197.45 |
| Equity in the Property: | ($ 62,247.28) |

12. The automatic stay in the Bankruptcy Action precludes Movant from exercising its post-default remedies under the Note and Deed of Trust with respect to the Property and requires that Movant seek relief from the automatic stay to exercise its non-bankruptcy rights therein.

///
///
///

1        13.    Based on the foregoing and for the all reasons set forth in the accompanying

2   Motion for Relief from Stay, Movant respectfully requests that the Court grant it relief from stay

3   so that it may proceed under non-bankruptcy law to enforce its rights and remedies in the

4   Property including the right to proceed with their non-judicial foreclosure sale and/or the right to

5   commence an unlawful detainer to recover possession of the Property, if necessary.

6       I declare under penalty of perjury under the laws of the United States of America that the

7   foregoing is true and correct. Executed this 20th day of September, 2017, at Beaverton,

8   Oregon.

9

10                        Shane A. Inman    , Declarant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

LOAN NUMBER:

# NOTE

| 04/29/04 | ANTIOCH | CA |
| [Date] | [City] | [State] |

2501 ROCA STREET, ANTIOCH, CA 94509

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      280,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.875    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on JULY 01, 2004 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JUNE 01, 2034         I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   BANK OF AMERICA, P.O. BOX 9000, GETZVILLE, NY 14068-9000           or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      1,656.31    .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

Case: 15-42808    Doc# 24-3    Filed: 10/10/17    Entered: 10/10/17 13:01:06    Page 6 of 36

EXHIBIT 1     001

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0101)

BS5R 04/29/04 4:11 PM

Page 2 of 3

Case: 15-42808     Doc# 24-3     Filed: 10/10/17     Entered: 10/10/17 13:01:06     Page 7 of 36

002

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
FRANCES T. STIFFLER                              -Borrower

_____ (Seal)
JOHN CLAYTON STIFFLER                        -Borrower

PAY TO THE ORDER OF

_____ (Seal)
WITHOUT RECOURSE                           -Borrower
Bank of America, N.A.

BY _____ (Seal)
WILLIAM L. CRAIG                            -Borrower
ASSISTANT VICE PRESIDENT

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower
(Sign Original Only)

BS5N (0101)                          Page 3 of 3
      BS5R 04/29/04 4:11 PM

14

58

610  242509104  D2  001  001

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2012-0119637-00**
Check Number
**Wednesday, MAY 23, 2012 11:52:00**
MOD   $14.00 REC   $24.00 FTC   $13.00
DAF    $2.70 REF    $0.30 RED    $1.00
ERD    $1.00
**Ttl Pd   $56.00      Rcpt # 0001277669**
rrc/RJ/1-14

Recording Requested By:
A. HUNT

After Recording Return To:
BANK OF AMERICA, N.A.

ReconTrust Co./TX2-979-01-07
P.O. Box 619003
Dallas, TX 75261-9003
Prepared By:
CELIA TORRES

*Exhibit A attached*

_____ [Space Above This Line For Recording Data] _____

Recording Requested By:
LSI

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   MAY 09, 2012                   , together with all Riders to this document.

**(B) "Borrower"** is

FRANCISCA T STIFFLER, AND JOHN CLAYTON STIFFLER, WIFE AND HUSBAND AS JOINT TENANTS

Borrower's address is
2501 ROCA ST, ANTIOCH, CA 94509
Borrower is the trustor under this Security Instrument.

---

**CALIFORNIA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)(d/i)                    Page 1 of 13

**(C)** "**Lénder**" is
BANK OF AMERICA, N.A.
Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
Lender's address is
101 South Tryon Street, Charlotte, NC 28255
Lender is the beneficiary under this Security Instrument.
**(D)** "**Trustee**" is
RECONTRUST COMPANY, N.A.
1800 TAPO CANYON RD, SIMI VALLEY, CA 93603
**(E)** "**Note**" means the promissory note signed by Borrower and dated MAY 09, 2012 . The Note
states that Borrower owes Lender
TWO HUNDRED FIFTY FOUR THOUSAND THREE HUNDRED FIFTY and 00/100

Dollars (U.S. $ 254,350.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than JUNE 01, 2042
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the
Note, and all sums due under this Security Instrument, plus interest.
**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not
limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers,
and automated clearinghouse transfers.
**(L)** "**Escrow Items**" means those items that are described in Section 3.
**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third
party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,
the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation;
or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.
**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

---

**CALIFORNIA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                                Page 2 of 13

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  COUNTY | of | CONTRA COSTA | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 0513310094                        which currently has the address of

2501 ROCA ST, ANTIOCH
[Street/City]

California      94509      ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01

Case: 15-42808    Doc# 24-3    Filed: 10/10/17    Entered: 10/10/17 13:01:06    Page 11
of 36                                                                        006

against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Deed of Trust-CA
1006--CA (06/09)

Form 3005 1/01

Case: 15-42808    Doc# 24-3    Filed: 10/10/17    Entered: 10/10/17 13:01:06    Page 12
of 36    007

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)                                       Page 5 of 13

to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**CALIFORNIA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                                   Page 6 of 13

Case: 15-42808    Doc# 24-3    Filed: 10/10/17    Entered: 10/10/17 13:01:06    Page 14 of 36

009

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due,

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                    Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                                    Page 7 of 13

Case: 15-42808    Doc# 24-3    Filed: 10/10/17    Entered: 10/10/17 13:01:06    Page 15
of 36

010

with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including,

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                                    Page 8 of 13

but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 1/01

attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Case: 15-42808    Doc# 24-3    Filed: 10/10/17    Entered: 10/10/17 13:01:06    Page 18
of 36

013

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

Case: 15-42808     Doc# 24-3     Filed: 10/10/17     Entered: 10/10/17 13:01:06     Page 19 of 36

014

**25.** **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
FRANCISCA T. STIFFLER                                         -Borrower

_____ (Seal)
JOHN CLAYTON STIFFLER                                     -Borrower

_____ (Seal)
                                                                              -Borrower

_____ (Seal)
                                                                              -Borrower

**CALIFORNIA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)                                      Page 12 of 13

DOC ID #:

State of California

County of ___CONTRA COSTA_____

On ___FRI. MAY 11, 2012_____ before me, ___STELLA OSTACHIEWICZ,   NOTARY PUBLIC_____,
personally appeared ___FRANCISCA  TUMABCAO STIFFLER  AND  JOHN CLAYTON_____
___STIFFLER_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___Ostach_____ (Seal)



STELLA OSTACHIEWICZ
COMM. #1931079
Notary Public - California
Contra Costa County
My Comm. Expires Apr. 1, 2015

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)

Page 13 of 13

Recording Requested By:
**Bank of America**
Prepared By: **Ariana Garcia**
**4909 Savarese Circle**
**Tampa, FL 33634**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**P.O. Box 961006**
**Ft Worth, TX 76161-9836**

DocID#
Property Address:
**2501 Roca ST**
**Antioch, CA 94509**
CA0-ADT      5/18/2016  FNF430

CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
**DOC- 2016-0098877-00**
Check Number
Wednesday, MAY 25, 2016 08:00:00
MOD  $1.00 | REC  $11.00 | FTC   $0.00
DAF  $2.70 | REF   $0.30 | RED   $1.00
ERD   $1.00 |
Ttl Pd  $17.00    Nbr-0002598622
                                    kat / R6 / 1-1

This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **4909 SAVARESE CIRCLE, TAMPA, FL 33634** does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is **14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary:                    **BANK OF AMERICA, N.A.**
Original Borrower(s):    **FRANCISCA T STIFFLER AND JOHN CLAYTON STIFFLER, WIFE AND HUSBAND AS JOINT TENANTS**
Original Trustee:           **RECONTRUST COMPANY, N.A.**
Date of Deed of Trust:   5/9/2012
Original Loan Amount:   **$254,350.00**

Recorded in **Contra Costa County, CA** on: 5/23/2012, book N/A, page N/A and instrument number **2012-0119637-00**

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**5/18/16**


                                    **BANK OF AMERICA, N.A.**


                                    By: _Joseph Luis Rosario_
                                    **Joseph Luis Rosario, Assistant Vice President**

State of **FL**, County of **Hillsborough**

The foregoing instrument was acknowledged before me this **MAY 18 2016**, by **Joseph Luis Rosario, Assistant Vice President** authorized to sign on behalf of **BANK OF AMERICA, N.A..** He/she is personally known to me or has produced ___ N/A ___ as identification.


Notary Public: _____ **Carlos A. Rivas**
My Commission Expires: _____ **6/21/2019**

CARLOS A. RIVAS
Notary Public, State of Florida
Commission# FF 242271
My comm. expires June 21, 2019

# EXHIBIT 3



Order No.:
Loan No.:

## Exhibit A

The following described property:

The land referred to in this policy is situated in the State of California, County of Contra Costa City of Antioch, and described as follows:

Lot 102, Map of Subdivision 6454, filed June 24, 1986, Map Book 304, Page 1 Contra Costa County Records.

Excepting therefrom all oil, gas, minerals and other hydrocarbon substances below a depth of 500 feet, without rights of surface entry, as reserved in Instruments of Record.

Assessor's Parcel No:      051-331-009

END OF DOCUMENT

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

Name of Debtor:  **John Clayton Stifler**                                    Case No.

### CHAPTER 13 PLAN

YOU WILL BE NOTIFIED OF THE DATE, TIME, AND LOCATION OF A HEARING TO CONFIRM THIS PLAN AND OF THE DEADLINE TO OBJECT TO ITS CONFIRMATION.  IN THE ABSENCE OF A TIMELY WRITTEN OBJECTION, THIS PLAN MAY BE CONFIRMED.  IT WILL BE EFFECTIVE UPON ITS CONFIRMATION.

### Section 1.  Plan Payments and Plan Duration

**1.01**     **Plan payments.**  To complete this plan, Debtor shall:

    **a.**  Pay to Trustee $__**125.00**__ per month for __**40**__ months from the following sources:  (describe, such as wages, rental income, etc.):__**Social security benefits & wages**__

    Debtor shall after _____ months, increase the monthly payment to $_____ for _____ months.

    **b.**  In addition to the foregoing monthly payments, pay to Trustee $__**0.00**__ from the following sources on the dates indicated:

Date(s):  _____

Source(s):  _____

    **c.**  The monthly plan payments will continue for __**40**__ months unless all allowed unsecured claims are fully paid within a shorter period of time.  This plan cannot propose monthly payments beyond 60 months.

### Section 2.  Claims and Expenses

**2.01.**     With the exception of any post-petition direct payments to be made by Debtor, the payments required by Sections 2.04, 2.05, 2.07, 2.08, 2.10 and 3.01 will not be made pursuant to this plan unless a timely proof of claim is filed by or on behalf of a creditor, including a secured creditor.

**2.02.**     The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim unless the court's order on a claim objection, valuation motion, lien avoidance motion, or adversary proceeding judgment affects the amount or classification of a claim.

**2.03.**     Trustee's fees shall be paid pursuant to 28 U.S.C. §586(e). Compensation due a former chapter 7 trustee shall be paid pursuant to 11 U.S.C. §1326(b)(3)(B). Debtor's attorney of record was paid $__**1,100.00**__ before the Chapter 13 case was filed. By separate order or in accordance with applicable Guidelines, after confirmation, debtor's attorney shall be paid additional fees of $__**2,500.00**__ through this plan at the rate of $__**116.87**__ per month until paid in full.

#### Secured Claims

**2.04.**     **Class 1: All delinquent secured claims that are not modified by this plan.** Class 1 claims are delinquent and other than the curing of any arrears, are not modified by this plan. Debtor or a third party (____) shall directly make all post-petition payments on Class 1 claims.

    **a.  Cure of arrears.**  Trustee shall pay in full all allowed pre-petition arrears on Class 1 claims.

    **b.  Application of payments.** The arrearage payment may include interest.  If the provision for interest is left blank, interest will not accrue.  The arrearage payment must be applied to the arrears. If this plan provides for interest on arrears, the arrearage payment shall be applied first to such interest, then to arrears.

| Class 1 Creditor's Name/ Collateral Description | Amount of Arrears | Interest Rate on Arrears (0% unless otherwise stated) | Fixed Arrearage Payment | Payment Start Date (Start date will be a specific month during the plan) |
|---|---|---|---|---|
| -NONE- | | | | |

**2.05.**     **Class 2: All secured claims that are modified by this plan.**

N.D. Cal. Model Chapter 13 Plan (August 1, 2013)

Software Copyright (c) 1996-2014 best Case LLC- www.bestcase.com                                    Best Case Bankruptcy

**EXHIBIT 4**

019

a. **Payment of claim.** Trustee shall satisfy each Class 2 claim by paying the amount specified below as the monthly payment. Subject to Section 2.05(c), Class 2 claims will be paid in full. The payment of a Class 2 claim shall not include interest unless otherwise specified. If Debtor does not intend to satisfy a Class 2 claim by periodic payments, Debtor shall check this box ☐ and provide for this claim in Additional Provisions.

b. **Adequate protection payments.** Before confirmation, Trustee shall pay each allowed Class 2 claim secured by a purchase money security interest in personal property an adequate protection payment as required by 11 U.S.C. §1326(a)(1)(C). As required by 11 U.S.C. §1325(a)(5)(B)(iii), equal monthly payments must be no less than the adequate protection payment.

c. **Claim amount.** The amount of a Class 2 claim is determined by applicable nonbankruptcy law. If applicable bankruptcy law authorizes a debtor to reduce a secured claim, Debtor may reduce the claim to the value of the collateral securing it by filing, serving, and prevailing on a motion or adversary proceeding to determine the value of that collateral. If this plan proposes to reduce a claim based upon the value of collateral, Debtor shall file this motion or adversary proceeding and have it decided before plan confirmation.

d. **Lien retention.** Each Class 2 creditor shall retain its existing lien as permitted under applicable bankruptcy law.

| Class 2 Creditor's Name/Collateral Description (No Reduction in Collateral Value) | Purchase Money Interest - Personal Property? Y/N | Estimated Amount of Claim | Interest Rate (0% unless otherwise stated) | Monthly Payment |
|---|---|---|---|---|
| -NONE- | | | | |

| Class 2 Creditor's Name/Collateral Description (Reduction in Collateral Value) | Reduced Value of Collateral | Interest Rate (0% unless otherwise stated) | Monthly Payment |
|---|---|---|---|
| -NONE- | | | |

**2.06. Class 3: All secured claims for which the collateral is being surrendered.** Upon confirmation of this plan, the automatic stay is modified to allow a Class 3 secured claim holder to exercise its rights against its collateral.

| Class 3 Creditor's Name | Collateral to be Surrendered |
|---|---|
| -NONE- | |

**2.07. Class 4: All other non-delinquent secured claims.** Class 4 claims are not delinquent and are not modified by this plan. Debtor or a third party (____) shall directly make all post-petition payments on Class 4 claims.

| Class 4 Creditor's Name/Collateral Description | Monthly Contract Installment |
|---|---|
| 1. Bank of America (First mortgage) 2501 Roca Street, Antioch CA 94509 | 1,200.00 |
| 2. Bank of America (Second mortgage) 2501 Roca Street, Antioch CA 94509 | 1,000.00 |

**2.08.** The deed of trust with _____ ("Creditor") encumbers real property located at _____, securing a loan that is the subject of a loan modification application (the "Application"). The monthly payment listed below represents the projected payment under the Application, and may not be the payment when the Application is approved or denied. Notwithstanding Section 2.04, and except as otherwise provided in this plan, Trustee will not pay any pre-petition arrears claimed by Creditor while the Application is proposed or pending.

a. If Creditor approves the Application, the monthly payment Debtor shall directly make will be the amount approved by Creditor.

b. If the approved Application changes the amount of arrears that otherwise would be paid under Section 2.04, alters any plan payment to be made to Trustee, or adversely affects the amount to be paid to claimants in Section 2.12, Debtor shall file an amended plan reflecting such changes within 14 days of receipt of written notification of approval of the Application.

c. If Creditor denies the Application, Debtor shall, within 14 days of receipt of written notification of denial of the Application, file an amended plan providing for appropriate treatment of pre-petition and post-petition arrears or surrender of the property.

d. If Debtor fails timely to file an amended plan, Debtor shall be deemed to be in material default under this plan and the remedies described in Section 4.02 shall be available to Trustee or Creditor.

| Class 4 Creditor's Name/Collateral Description | Monthly Contract Installment | Monthly Modification Installment |
|---|---|---|
| -NONE- | | |

**2.09.** Secured claims not listed as Class 1, 2, 3, or 4 claims are not provided for by this plan, and Trustee shall not make any disbursements on such claims. The failure to provide for a secured claim in one of these classes may be cause to terminate the automatic stay as to such claim holder.

<u>Unsecured Claims</u>

**2.10. Class 5: Unsecured claims entitled to priority pursuant to 11 U.S.C. §507.** Trustee shall pay in full Class 5 claims, whether or not listed below, unless a claim holder agrees to accept less or 11 U.S.C. §1322(a)(4) is applicable. If 11 U.S.C. §1322(a)(4) applies, the claim holder and the treatment of the claim shall be specified in the Additional Provisions. Notwithstanding any other provision in this plan, Debtor shall directly pay all domestic support obligations and all loan payments to a retirement or thrift savings plan that are due and payable post-petition, regardless of whether this plan is confirmed or a proof of claim is filed.

| | Class 5 Creditor's Name | Type of Priority | Estimated Claim Amount |
|---|---|---|---|
| 1. | Franchise Tax Board | Taxes and certain other debts | 0.00 |
| 2. | Internal Revenue Service | Taxes and certain other debts | 0.00 |

**2.11. Class 6: Designated unsecured claims that will be paid in full even though all other nonpriority unsecured claims may not be paid in full.**

| Class 6 Creditor's Name | Reason for Special Treatment | Estimated Claim Amount |
|---|---|---|
| -NONE- | | |

**2.12. Class 7: All other unsecured claims.** These claims, including the unsecured portion of secured recourse claims not entitled to priority, total approximately **$16,447.97.** The funds remaining after disbursements have been made to pay all administrative expense claims and other creditors provided for in this plan are to be distributed on a pro-rata basis to Class 7 claimants.
[select one of the following options:]

_____ **Percent Plan.** Class 7 claimants will receive no less than _____% of their allowed claims through this plan.

__X__ **Pot Plan.** Class 7 claimants are expected to receive __13__% of their allowed claims through this plan.

### Section 3. Executory Contracts and Unexpired Leases

**3.01.** Debtor assumes the executory contracts and unexpired leases listed below. Debtor shall directly make all post-petition payments to the other party to the executory contract or unexpired lease. Unless a different treatment is required by 11 U.S.C. §365(b)(1) and is set out in the Additional Provisions, Trustee shall pay in full all pre-petition defaults

| Name of Other Party to Executory Contract Unexpired Lease | Description of Contract/Lease | Regular Monthly Payment | Pre-petition Default | Monthly Cure Payment |
|---|---|---|---|---|
| -NONE- | | | | |

**3.02.** Any executory contract or unexpired lease not listed in the table above is rejected. A proof of claim for any rejection damages shall be filed by the later of the claims bar date or thirty days after confirmation of this plan. Upon confirmation of this plan, the automatic stay is modified to allow the nondebtor party to a rejected, unexpired lease to obtain possession of leased property, to dispose of it under applicable law, and to exercise its rights against any nondebtor in the event of a default under applicable law or

contract.

## Section 4.  Miscellaneous Provisions

**4.01.    Vesting of property.**  Property of the estate will revest in Debtor upon confirmation.

If Debtor does not want the property to revest, Debtor must check the following box:☐ SHALL NOT REVEST.

If the property of the estate does not revest in Debtor, Trustee is not required to file income tax returns for the estate, insure any estate property or make any of Debtor's ongoing, regular post-petition debt payments with the exception of monthly cure payments otherwise required by this plan. Upon completion of this plan, all property shall revest in Debtor.

Notwithstanding the revesting of property in Debtor, the court will retain its supervisory role post-confirmation to enforce Fed. R. Bankr. P. 3002.1 and provide any other relief necessary to effectuate this plan and the orderly administration of this case.

After the property revests in Debtor, Debtor may sell, refinance or execute a loan modification regarding real or personal property without further order of the court with the approval of Trustee.

**4.02.    Remedies upon default.**  If Debtor defaults under this plan or does not complete this plan within 60 months, Trustee, or any other party in interest may request appropriate relief pursuant to Local Bankruptcy Rules.  This relief may consist of, without limitation, dismissal of the case, conversion of the case to chapter 7, or relief from the automatic stay to pursue rights against collateral. If the court terminates the automatic stay to permit a Class 1 or 2 secured claim holder or a party to an executory contract or unexpired lease to proceed against its collateral, unless the court orders otherwise, Trustee shall make no further payments on account of such secured claim, executory contract or unexpired lease claim, and any portion of such secured claim not previously satisfied under this plan shall be treated as a Class 3 claim.  Any deficiency remaining after the creditor's disposition of its collateral for which Debtor has personal liability shall be treated as a Class 7 claim subject to the timely filing of a proof of claim.

**4.03 Impermissible Provisions.**  Notwithstanding any other term in this plan, Debtor does not seek through the confirmation and completion of this plan either a determination of the dischargeability of any debt or the discharge of any debt that is non-dischargeable as a matter of law in a Chapter 13 case under 11 U.S.C. §1328.

## Section 5.  Additional Provisions

This plan is the court's standard plan form.  Other than to insert text into designated spaces, expand tables to include additional claims, or change the title to indicate the date of the plan or that the plan is a modified plan, the preprinted text of this form has not been altered.  If there is an alteration, it will be given no effect.  The signatures below are certifications that the standard plan form has not been altered.

Despite the foregoing, as long as consistent with the Bankruptcy Code, the Debtor may propose additional provisions that modify the preprinted text.  All additional provisions shall be on a separate piece of paper appended at the end of this plan.  Each additional provision shall be identified by a section number beginning with section 5.01and indicate which section(s) of the standard plan form have been modified or affected.

Additional Provisions  **[choose one]** are ☐ are not ☑ appended to this plan.

| Dated: | September 11, 2015 | **/s/ John Clayton Stifler** |
| | | **John Clayton Stifler** |
| | | Debtor |
| | | |
| | | Debtor |
| Dated: | September 11, 2015 | **/s/ Patrick L. Forte** |
| | | **Patrick L. Forte 80050** |
| | | Debtor's Attorney |

N.D. Cal. Model Chapter 13 Plan (August 1, 2013)

Software Copyright (c) 1996-2014 Best Case LLC - www.bestcase.com                                        Best Case Bankruptcy

Case: 15-42808    Doc# 2    Filed: 09/11/15    Entered: 09/11/15 16:30:07    Page 4 of 4

Case: 15-42808    Doc# 24-3    Filed: 10/10/17    Entered: 10/10/17 13:01:06    Page 27
of 36

022

**Entered on Docket**
**October 19, 2015**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Martha G. Bronitsky
Chapter 13 Standing Trustee
Po Box 5004
Hayward, CA 94540

Trustee for Debtor(s)

**The following constitutes the order of the court.**
**Signed October 19, 2015**

_William J. Lafferty, III_

**William J. Lafferty, III**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In Re

    John Clayton Stifler                   Chapter 13 Case Number:
                                              15-42808-WJL13

                     Debtors(s)

## CONFIRMATION ORDER AFTER MEETING OF CREDITORS

1. The Meeting of Creditors having been concluded on  October 15 , 2015
2. Upon consideration of the papers filed in this case, any testimony given at the Confirmation Hearing  (s), any argument of counsel,
3. The Court makes the following findings:
    a. The Plan complies with the provisions of Chapter 13 Title 11, United States Code;
    b. The Debtor has paid the filing fee in full in this case;
    c. The Plan has been proposed in good faith and not by any means forbidden by law;
    d. The value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7 of this Title on such date;
    e. With respect to each allowed secured claim provided for by the Plan;
        i. The Holder of such claim has accepted the Plan; or
        ii. (A) The Plan provides that the holder of such claim retain the lien securing such claim;
        and (B) The value, as of the effective date of the Plan, of property to be distributed under the Plan on account of such claim is not less than the allowed amount of such claim; or
        iii. The Debtor surrenders the property securing such claim to such holder; and
    f. The Debtor will be able to make all payments under the Plan and to comply with the Plan .
4. GOOD CAUSE APPEARING
    a. IT IS ORDERED that the Debtor(s) Plan (or Amended Plan) filed on September 11, 2015, same as docket # 2 is confirmed.
    b. IT IS FURTHER ORDERED that the future income of the Debtor(s) is submitted to the supervision and control of the Trustee, as is necessary for the execution of the Plan  (or Amended Plan).
    c. IT IS FURTHER ORDERED that any creditor whose claim is entirely disallowed by final non appealable order, and any creditor listed in the Debtors' original Schedules that has not filed a proof of claim by the claims bar date need not be served with notice of any subsequent action in this case by the Debtors or the Trustee unless such creditor files a request for special notice with the Court and serves such request on the Trustee and Debtors' attorney . Notwithstanding the above, if the proposed action would adversely impact a creditor, that creditor must be served notice.
ADDITIONAL PROVISIONS:  Pro Tanto Amount  $5,000.00

END OF ORDER

# POST-PETITION PAYMENT HISTORY

| Name: | Stifler | | | | Todays Date | | 9/12/2017 |
|---|---|---|---|---|---|---|---|
| Loan: | | | | | | | |
| Case: | 15-42808 | | | BK Specialist | | William Dollarhide | |
| Filing Date: | 9/11/2015 | | | BK QA Check Specialist | | Name | |
| Modification: | NA | | | | | | |
| Agreed Order: | NA | | | | | | |

| Date Received | Amount Received | $ Applied To Payment | Applied to Month | Paid To Suspense | Running Suspense Total | Post Petition Payment Amount Due | Court Filed PCN Date |
|---|---|---|---|---|---|---|---|
| 9/18/2015 | $ 1,307.71 | $ 1,307.71 | Oct-15 | $ - | $ - | | |
| 10/13/2015 | $ 1,307.71 | $ 1,307.71 | Nov-15 | $ - | $ - | | |
| 11/4/2015 | $ 1,307.71 | $ 1,307.71 | Dec-15 | $ - | $ - | | |
| 11/25/2015 | $ 1,307.71 | $ 1,307.71 | Jan-16 | $ - | $ - | | |
| 1/4/2016 | $ 1,307.71 | $ 1,307.71 | Feb-16 | $ - | $ - | | |
| 1/21/2016 | $ 1,307.71 | $ 1,307.71 | Mar-16 | $ - | $ - | | |
| 2/12/2016 | $ 1,307.71 | $ 1,307.71 | Apr-16 | $ - | $ - | | |
| 5/19/2016 | $ 1,307.71 | $ 1,307.71 | May-16 | $ - | $ - | | |
| 6/1/2016 | $ 1,307.71 | $ 1,307.71 | Jun-16 | $ - | $ - | | |
| 6/16/2016 | $ 1,307.71 | $ 1,307.71 | Jul-16 | $ - | $ - | | |
| 7/22/2016 | $ 1,307.71 | $ 1,307.71 | Aug-16 | $ - | $ - | | |
| 8/25/2016 | $ 1,307.71 | $ 1,307.71 | Sep-16 | $ - | $ - | | |
| 9/30/2016 | $ 1,307.71 | $ 1,307.71 | Oct-16 | $ - | $ - | | |
| 12/12/2016 | $ 1,307.71 | $ 1,307.71 | Nov-16 | $ - | $ - | | |
| 2/3/2017 | $ 1,307.71 | $ 1,307.71 | Dec-16 | $ - | $ - | | |
| 3/29/2017 | $ 1,307.71 | $ 1,307.71 | Jan-17 | $ - | $ - | | |
| 4/24/2017 | $ 1,307.71 | $ 1,307.71 | Feb-17 | $ - | $ - | | |
| 5/30/2017 | $ 1,307.71 | $ 1,307.71 | Mar-17 | $ - | $ - | | |
| 7/3/2017 | $ 1,307.71 | $ 1,307.71 | Apr-17 | $ - | $ - | | |
| 9/5/2017 | $ 1,307.71 | $ 1,307.71 | May-17 | $ - | $ - | | |
| Unpaid | | | Jun-17 | $ - | $ - | $ 1,307.71 | |
| Unpaid | | | Jul-17 | $ - | $ - | $ 1,307.71 | |
| Unpaid | | | Aug-17 | $ - | $ - | $ 1,307.71 | |
| Unpaid | | | Sep-17 | $ - | $ - | $ 1,307.71 | |

|  | $ | - | $ | - | $ | - |
|---|---|---|---|---|---|---|

| Total Installments | $ | 5,230.84 |
|---|---|---|
| Suspense | $ | - |
| Total Post Arrears | $ | 5,230.84 |

**Due 6/1/17**

B6A (Official Form 6A) (12/07)

In re    **John Clayton Stifler**                             Case No. _____

                                             Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **2501 Roca Street, Antioch CA 94509** | **Fee simple** | - | **310,000.00** | **374,304.70** |

|  | Sub-Total > | 310,000.00 | (Total of this page) |
|---|---|---|---|
|  | Total > | 310,000.00 |  |

   **0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                          Best Case Bankruptcy

**EXHIBIT 6**

026

In re **John Clayton Stifler**                           Case No. _____

                                    Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | 2012 | | | | | |
| Bank of America PO Box 5170 Simi Valley, CA 93062-5170 | | | First Mortgage 2501 Roca Street, Antioch CA 94509 | | | | | |
| | | | Value $         310,000.00 | | | | 242,107.25 | 0.00 |
| Account No. | | | | | | | | |
| Bank of America PO Box 650070 Dallas, TX 75265-0070 | | | Representing: Bank of America | | | | Notice Only | |
| | | | Value $ | | | | | |
| Account No. | | | 2004 | | | | | |
| Bank of America PO Box 941000 Simi Valley, CA 93094-1000 | | | Second mortgage 2501 Roca Street, Antioch CA 94509 | | | | | |
| | | | Value $         310,000.00 | | | | 132,197.45 | 64,304.70 |
| Account No. | | | | | | | | |
| Bank of America PO Box 21848 Greensboro, NC 27420-1848 | | | Representing: Bank of America | | | | Notice Only | |
| | | | Value $ | | | | | |

0   continuation sheets attached

                        Subtotal     | 374,304.70 | 64,304.70
              (Total of this page)

                         Total     | 374,304.70 | 64,304.70
      (Report on Summary of Schedules)

2014 00073592
Bk: 44818 Pg: 295 Page: 1 of 3
Recorded: 10/07/2014 11:39 AM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

Washington County, Oregon
08/05/2013 04:08:42 PM                **2013-071727**
D-PA          Cnt=1  Stn=19  Y LOPEZ
$10.00 $5.00 $11.00 $15.00 - Total =$41.00

01865317201300717270020027

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

Record and Return to:
Seterus, Inc.
Title Services Department
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005

LIMITED POWER OF ATTORNEY

FROM: Federal National Mortgage Association

TO: SETERUS, INC

## LIMITED POWER OF ATTORNEY

Federal National Mortgage Association, a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitute and appoints Seterus Inc., 8501 IBM Drive, Building 201 #2DD188, Charlotte, North Carolina 28262 (headquarters), a Corporation organized and existing under the laws of the state of Delaware, its true and lawful Attorney-in-Fact, and in its name, place, and stead and for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1. the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2. the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3. the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4. the modification or extension of a mortgage or deed of trust;

5. the subordination of the lien of a mortgage or deed of trust;

6. the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions:

    a. the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
    b. the issuance of a statement of breach or nonperformance;
    c. the issuance or cancellation or rescission of notices of default;
    d. the cancellation or rescission of notices of sale; and
    e. the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Federal National Mortgage Association to the Attorney-in-Fact under this Limited Power of Attorney;

7. the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8. the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS); a state or private mortgage insurer, or Mortgage Electronic Registration System (MERS™).

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power of the Attorney-in-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of October, 2011.

Federal National Mortgage Association

By: _____
Barbara Cushman
Asst. Vice President

By _____
Francisco Nicco-Annan
Assistant Secretary

STATE OF VIRGINIA     }
COUNTY OF FAIRFAX     }

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this 12th day of October, 2011 by Barbara Cushman, Assistant Vice President, and Francisco Nicco-Annan, Assistant Secretary of Federal National Mortgage Association's United States Corporation, on behalf of the corporation.

_____
Notary Public: Shanicka Singleton
My Commission Expires: 10/31/2015

SHANICKA SINGLETON
Notary Public - Reg. # 7033944
Commonwealth of Virginia
My Commission Expires Oct. 31, 2015



I, *Richard W. Hobernicht,* Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, do hereby certify this to be a true and correct copy of the original.

Date: June 2, 2014

By: Myory, DePuty
M Lopez

The foregoing is a true copy from the
Plymouth County Registry of Deeds.
Book 44818  Page 259
Attest: *John R. Buckley Jr.*
Register